UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DEANDRE JOHNSON, #20182885

      Petitioner,

v.

                                        Case No. 2:20cv474

HAROLD W. CLARKE, Director,
Virginia Department of Corrections,

      Respondent.

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Petitioner Deandre Johnson's ("Petitioner") *pro se* Petitions for a Writ of Habeas Corpus ("the Petitions") filed pursuant to 28 U.S.C. § 2254, ECF Nos. 1, 15, and Respondent Harold W. Clarke's ("Respondent") Motion to Dismiss, ECF No. 26. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 26, be **GRANTED**, and the Petitions, ECF Nos. 1, 15, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. PROCEDURAL BACKGROUND

On June 5, 2019, Petitioner was convicted of Strangulation, Rape, Assault and Battery-

Family Member, and Unlawful Entry (the "First Convictions") in the Circuit Court of Spotsylvania

County (the "Trial Court"). ECF No. 28 at 1. The Trial Court entered its judgment on November

19, 2019, and sentenced Petitioner to fourteen years in prison. *Id.*; ECF No. 11, attach. 1 at 1.

Petitioner appealed his First Convictions to the Court of Appeals of Virginia, arguing that the Trial

Court erred by denying his motion to set aside the verdict with respect to the rape, strangulation,

and unlawful entry charges because the victim's testimony was not credible and conflicted with

his testimony. ECF No. 28 at 1. According to the factual findings of the Court of Appeals of

Virginia, Petitioner's conviction arises out of the following factual background:

> After dating in college, appellant and Courtney Tejada got married in
> November 2018, but immediately attempted to dissolve the union. In December
> 2018 they were estranged, and Tejada was living with Nestar Macias. Appellant
> was opposed to the divorce and, on the afternoon of December 26, 2018, he texted
> Tejada and begged her to reconcile. Tejada threatened to get a restraining order if
> he did not leave her alone.

> That evening, Tejada and Macias were climbing the exterior stairwell to her
> third-floor apartment when the appellant approached them from behind. Appellant
> grabbed Tejada, put his hand over her mouth, and pushed her inside the apartment.
> Tejada yelled to Macias to call the police. Once appellant and Tejada were inside
> her apartment, he pushed her into the bedroom, forced her onto the bed and tore off
> her clothes. When he ripped off her shirt, he bit her on the breast. Appellant
> penetrated her vaginally with his penis, but he was unable to maintain an erection
> and withdrew.

> Macias called Tejada's father for help and entered the apartment. When he
> looked into the bedroom, he saw appellant in bed with Tejada with his hands around
> her throat. Appellant threatened to kill him, prompting Macias to retreat and call
> 911. After Macias's departure, appellant choked Tejada so forcefully that she
> nearly lost consciousness. She testified that he released her only when he heard
> police sirens approach. Appellant fled the apartment without stopping to collect his
> boots or his jacket.

> When Sergeant Collins responded to Tejada's apartment, he found her
> sitting on her bed crying. Her clothes were ripped open and there were red marks
> on her neck. She also had a laceration inside her upper lip. Detective Corona
> photographed the marks on her neck and the injury to her lip. A pair of black, size
> 12 men's shoes were on the floor next to Tejada's bed, and appellant's black jacket
> was in the living room. Shortly after the police arrived at the scene, appellant

returned to the apartment building and was apprehended. He was barefoot and was carrying his marriage certificate.

Collins transported appellant to the sheriff's office where Corona interviewed him. Appellant admitted that he had 'grabbed' Tejada outside her apartment, as well as her apartment keys, and that he had 'escorted' her into her apartment. However, he denied having any sexual contact with her. When asked why his boots were in her bedroom, appellant replied that he did not know. Appellant also had no explanation for the marks on Tejada's neck.

Following Corona's interview, Collins took appellant to the magistrate. As they waited, Collins outlined the charges against him. In response, appellant emphasized that he 'didn't penetrate' Tejada. Collins asked, 'If you didn't penetrate her, would there be any reason why your DNA would be in her vagina area?' Appellant answered, 'yes,' but stressed that he 'could not get an erection, so he didn't penetrate her vagina.'

Tejada underwent a SANE examination that evening. The SANE nurse, Wanda Roy, noted that Tejada had bruises on her right breast and marks on her neck consistent with strangulation. Swabs of Tejada's inner thigh and her right breast taken during the examination revealed the presence of foreign DNA material, including seminal fluid on her thigh. Macias was eliminated as a potential contributor of the DNA material, but appellant was not. Forensic biologist Caitlin Ayoub noted that the 'probability [sic] of randomly . . . selecting an unrelated individual who would be included as a contributor of the profile different from . . . Tejada . . . [wa]s one in greater than 7.2 billion,' or 'approximately the world population in the Caucasian, African-American and Hispanic population.'

At trial, appellant testified that he encountered Tejada and Macias in the stairwell and that, Macias, whom appellant had threatened previously, fled. Appellant stated that Tejada entered the apartment with him voluntarily and that she followed him into the bedroom. He maintained that she consented to having sexual relations with him. Although appellant admitted that he had strangled her on a prior occasion following an altercation, he denied strangling her on the night of December 26, 2018. Instead of strangling her, he stated that he slapped her thighs after she insulted him and asked him to leave. While appellant stressed that he was unable to penetrate Tejada's vagina because he could not maintain an erection, he conceded, 'I wanted to with all my heart.'

ECF No. 28, attach. 1 at 2–4.

Specifically, on appeal, Petitioner argued that (1) "the trial court erred by denying his motion to set aside his strangulation conviction because Tejada's testimony was not credible" and further noted that he "denied strangling Tejada, that she did not black out, and that the evidence

3

demonstrated no 'lasting injury' to her"; (2) that "Tejada's testimony that he penetrated her vagina with his penis was not credible because she 'did not actually see his penis' and she admitted he could not maintain an erection"; and (3) that the evidence failed to prove that he entered Tejada's apartment unlawfully because 'nothing in [his] testimony suggests that he entered [her] apartment without her consent' and that no physical evidence refuted his testimony." *Id.* at 4.

On August 20, 2020, the Court of Appeals denied Petitioner's appeal and found that the Trial Court was entitled to accept the victim's testimony and to reject Petitioner's self-serving account, and that the victim's account of events was corroborated by physical evidence and another witness' testimony. ECF No. 28, attach. 1 at 1, 5-6. Petitioner then appealed to the Supreme Court of Virginia, and the Supreme Court of Virginia refused the appeal on August 6, 2021. ECF No. 28 at 2.

On April 19, 2019, Petitioner was also convicted of five counts of Protective Order Violations in the Spotsylvania County Circuit Court (the "Second Convictions"). ECF No. 28 at 2; ECF No. 15 at 1. He was sentenced to serve twelve months of incarceration with ten months suspended on each count. ECF No. 28, attach. 4 at 1; ECF No. 15 at 1. Petitioner appealed those convictions to the Court of Appeals of Virginia, but, on June 2, 2020, Petitioner moved to withdraw his notice of appeal, which the Court of Appeals of Virginia granted on June 3, 2020. ECF No. 28 at 3; ECF No. 15 at 2.

Petitioner has also filed at least three separate petitions for Writ of Habeas Corpus in the Supreme Court of Virginia. Petitioner filed the first petition on December 2, 2019 (the "First State Habeas Petition") challenging his First Convictions and raising the following claims: "sufficiency of evidence, confrontation clause, witness credibility and double jeopardy." ECF No. 1 at 3. On August 24, 2020, the Supreme Court of Virginia dismissed the First State Habeas Petition, finding

that Petitioner's claims "are barred because a petition for a writ of habeas corpus may not be employed as a substitute for an appeal." ECF No. 28, attach. 2 at 1.

Petitioner filed the second petition on January 30, 2020 (the "Second State Habeas Petition"), challenging his Second Convictions and raising the following claims: (1) "the trial court failed to comply with Rule 5A:8(d) when it granted the Commonwealth's objection to petitioner's statement of facts, failed to conduct a hearing, and signed the Commonwealth's statement of facts; and (2) that the evidence at trial was insufficient to sustain his convictions. *See* ECF No. 28, attach. 4 at 1. On August 24, 2020, the Supreme Court of Virginia dismissed the Second State Habeas Petition, finding that Petitioner's claims "are barred because a petition for a writ of habeas corpus may not be employed as a substitute for an appeal." ECF No. 28, attach. 2 at 2.

Petitioner filed a third Petition for a Writ of Habeas Corpus on November 17, 2020 (the "Third State Habeas Petition"), alleging that pursuant to his Second Convictions, "he was denied the effective assistance of counsel when his counsel failed to advise him that, if he withdrew his appeal, his appellate claims would be waived." ECF No. 28, attach. 4 at 1. Petitioner asserted that "he wished to challenge the trial court's interpretation of Code § 16.1-253.2 and the sufficiency of the evidence to sustain his convictions" and that "had he known he could not later raise these issues in a collateral review proceeding, he would have proceeded with the appeal and his appeal would have succeeded." *Id.* In dismissing the Third State Habeas Petition, the Supreme Court of Virginia held:

> this claim satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The record, including the affidavit that petitioner filed in support of his request to withdraw his appeal, demonstrates that petitioner provided the Court of Appeals with a notarized affidavit in which he averred counsel advised him he could waive his appeal, but if he did, his appellate issues would be abandoned 'irrevocably.'

5

Petitioner stated he 'knowingly and voluntarily, and after mature consideration,' wished to withdraw his notice of appeal. Accordingly, the record demonstrates that contrary to petitioner's claim, he was advised by counsel that withdrawal of his appeal would result in the waiver of his appellate issues. Petitioner nonetheless decided to withdraw his appeal. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

*Id.* at 2.

Petitioner filed two petitions for habeas relief in this Court on September 17, 2020. The first petition arises out of Petitioner's First Convictions (the "First 2254 Petition"). ECF No. 1. The second petition arises out of Petitioner's Second Convictions (the "Second 2254 Petition"). ECF No. 15. Because the petitions were substantially similar, the Court consolidated the petitions under the primary case number 2:20cv474. *See* ECF No. 14; *Johnson v. Clarke*, 2:20cv475, ECF No. 12 (consolidating Case No. 2:19cv475 with 2:20cv474). Additionally, Petitioner filed a number of additional documents to support the Petitions, including: a "memorandum in support" of the First 2254 Petition (ECF No. 9); a "supplement" to the First 2254 Petition (ECF No. 11, attach. 1); a "memorandum in support" of the Second 2254 Petition (ECF No. 16); a "motion to amend" that appears tied to both petitions (ECF No. 25). While there are many extraneous details in each Petition and subsequent filings, the Petitions each derive from Petitioner's First and Second Convictions in the Spotsylvania County Circuit Court. Construing the Petitions broadly, the Court determines that the Petitions raise grounds for relief as follows:

The First 2254 Petition raises the following claims:

A. *"Insufficient Evidence to Prove Penetration Beyond a Reasonable Doubt (Rape)"* ECF No. 1 at 6–7; ECF No. 9 at 2, 3–4; ECF No. 11, attach. 1 at 8; ECF No. 25 at 2.

B. *"Prosecutrix Inherently Incredible (Equal Protection Claim)"* ECF No. 1 at 6, 9; ECF No. 9 at 2, 4–5; ECF No. 11, attach. 1 at 5, 8

6

C.  *"Confrontation Clause Violation (Chapman v. California, 386 U.S. 18 (1967))"*
ECF No. 9 at 2, 5; ECF No. 11, attach. 1 at 6–7; ECF No. 25 at 2.

D.  *"Napue v. Illinois, 360 U.S. 264 (1959) (False Testimony)"*
ECF No. 1 at 9; ECF No. 9 at 2, 5–6; ECF No. 11, attach. 1 at 9–11; ECF No. 25 at 1–2.

E.  *"Strangulation Conviction Violates Double Jeopardy Clause, Where Petitioner Was Also Convicted of Common Law Assault and Battery"*
ECF No. 1 at 4; ECF No. 9 at 2, 6–7; ECF No. 11, attach. 1 at 10; ECF No. 25 at 2.

F.  *"Insufficient Evidence to Prove Requisite Specific Intent (Unlawful Entry)"*
ECF No. 1 at 11; ECF No. 9 at 2, 7; ECF No. 11, attach. 1 at 5.

G.  *"Substantive and Procedural Denial of Due Process (Virginia Code § 8.01-654 creates a liberty and property interest that was denied to Petitioner, and VA Rule 5:7(a)(4) is facially unconstitutional)"*
ECF No. 1 at 11.

H.  *"Counsel Was Ineffective By:*
    *a) Presenting claims on direct appeal that were not presented in the Trial Court;*
    *b) Refusing to remove himself as counsel; and*
    *c) Failing to raise issues on direct appeal which were presented in the Trial Court, including the claims A-G outlined above."*
ECF No. 11, attach. 1 at 1–14; ECF No. 25 at 2–3.

The Second 2254 Petition raises the following claims:

1.  *"Insufficient Evidence to Prove Violation of a Protective Order"*
ECF No. 15 at 4.

2.  *"Erroneous Interpretation of a Statute Va Code. § 16.1-253.2"*
ECF No. 15 at 6

3.  *"Substantive and Procedural Due Process Violation by Denying Petitioner His Liberty and Property Interest in Va. Code 8.01-654"*
ECF No. 15 at 7.

4.  *"Violation of First Amendment/Prejudice"*
ECF No. 16 at 1; ECF No. 25 at 2.

5.  *"Counsel Was Ineffective By Failing to Advise Petitioner of the Consequences of Withdrawing His Direct Appeal on a Future Habeas Petition."*
ECF No. 16 at 3–6; ECF No. 25 at 3.

Respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and *Roseboro* Notice.  ECF Nos. 26–29.  Petitioner did not file a specific response addressing Respondent's Motion.[1]  Therefore, the Petitions and Motion to Dismiss are now ripe for recommended disposition.

## II. DISCUSSION

A. Exhaustion, Procedural Default, and Federally Cognizable Habeas Claims

Before considering the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted the claims asserted in the Petition, and whether Petitioner has procedurally defaulted on his claims.[2]  Additionally, the Court will not consider the merits of a petitioner's claims which seek relief not cognizable upon federal habeas review.

*1. Exhaustion*

Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618.  The exhaustion requirement is satisfied if the prisoner seeks review of his

---

[1] Petitioner filed a number of other motions and extraneous filings after Respondent's Motion to Dismiss. *See* ECF Nos. 31–32, 33, 37, 38. Although none of those filings appear to respond directly to the arguments made in Respondent's Motion to Dismiss, to the extent those filings do respond to Respondent's Motion to Dismiss, the Court will address them accordingly.

[2] Respondent concedes that Petitioner's claims are timely pursuant to 28 U.S.C. § 2244(d). ECF No. 28 at 7.

claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 5 26 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). "Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition." *Moody v. Dir., Virginia Dep't of Corr.*, No. 1:14CV1581 (GBL/TCB), 2016 WL 927184, at *3 (E.D. Va. Mar. 3, 2016), appeal dismissed, 669 F. App'x 160 (4th Cir. 2016) (citing *Duncan v. Henry*, 513 U.S. 364 (1995)).

   *2. Procedural Default.*

   "A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). As the Fourth Circuit has explained, the procedural default doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). *See also Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) ("A federal claim is deemed procedurally defaulted where 'a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule.' . . . A federal court cannot review a procedurally defaulted claim unless the prisoner can demonstrate cause and prejudice for the default or a fundamental miscarriage of justice.") (quoting *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998); citing *Coleman v.*

9

*Thompson*, 501 U.S. 722, 750 (1991)) (internal citations omitted). As the Supreme Court has observed, "[t]he procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). When considering a petition for federal habeas corpus, § 2254(d) mandates that a state court's finding of procedural default be presumed correct, provided that the state court relied explicitly on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (explaining that "an adequate and independent state procedural bar to the entertainment of constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied") (citing *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)).

Additionally, a petitioner seeking federal habeas relief also procedurally defaults his claims when he "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Under these circumstances, the claim is considered simultaneously exhausted and procedurally defaulted so long as "it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). Importantly, however, if "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence," a federal court may not review the simultaneously exhausted and procedurally defaulted claim. *Id.* (quoting *Gray*, 518 U.S. at 162).

10

Absent a showing of cause for the default and prejudice or a fundamental miscarriage of justice (such as actual innocence), this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (explaining that "a petitioner may nonetheless overcome procedural default, and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). The Fourth Circuit has held that "[t]o establish cause, a petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). *See also Davila v. Davis*, 137 S. Ct. 2058, 2065, 198 L. Ed. 2d 603 (2017) ("A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). "This requires a demonstration that 'the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999)). "Importantly, a court need not consider the issue of prejudice in the absence of cause." *Booker v. Clarke*, No. 1:15CV781 (JCC/JFA), 2016 WL 4718951, at *5 (E.D. Va. Sept. 8, 2016), *appeal dismissed*, 678 F. App'x 152 (4th Cir. 2017), cert. denied, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996)).

3. *Cognizable Claims*

"A state prisoner is entitled to relief under § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Billotti v. Legursky*, 975 F.2d 113, 119 (4th Cir. 1992) (quoting *Engle v. Isaac*, 456 U.S. 107, 109 (1982)). Thus, questions of state law that do not implicate federal rights are not cognizable on federal habeas review. *Id.* (citing *Inge v. Procunier*, 758 F.2d 1010, 1014 (4th Cir. 1985). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (holding a petitioner's allegation that the state court lacked jurisdiction rested upon state law and therefore was not cognizable on federal habeas review); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors involved with state post-conviction proceedings are not cognizable on federal habeas review).

4. *Claims C, D, E, H, 1, 2, and 4 are simultaneously exhausted and procedurally defaulted on adequate and independent state-law grounds.*

Although Petitioner did not raise Claims C, D, E, 1, 2, and 4 on direct appeal, he did raise them in the First and Second State Habeas Petition, which were presented to the Supreme Court of Virginia. However, the Supreme Court of Virginia dismissed these claims, finding that the claims were barred because a petition for writ of habeas corpus may not be substituted for an appeal pursuant to *Brooks v. Peyton*. *See* ECF No. 28, attach. 2 at 1–2. The Supreme Court of Virginia's application of the rule in *Brooks v. Peyton* is an adequate and independent state law ground for dismissal of Petitioner's claims. *Jeffers v. Allen*, No. 1:15CV808, 2016 WL 8731439, at *3 (E.D. Va. Mar. 18, 2016) (holding that state habeas court's application of *Brooks v. Peyton* is an adequate and independent state-law ground for a finding of procedural default). Accordingly,

these claims are simultaneously exhausted and procedurally defaulted for purposes of federal habeas review.

Petitioner failed to exhaust Claim H[3] because he did not present it to the Supreme Court of Virginia either on direct appeal or through a state habeas petition. If Petitioner were to present Claim H in a new state habeas petition to the Supreme Court of Virginia, it would be procedurally barred as both untimely under Virginia Code § 8.01-654(A)(2), and successive under Virginia Code § 8.01-654(B)(2). Both Virginia Code § 8.01-654(A)(2) and Virginia Code § 8.01-654(B)(2) constitute adequate and independent state-law grounds for decision. *Sparrow*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006) (Va. Code § 8.01-654(A)(2) is an independent and adequate state procedural rule); *Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000) (Va. Code § 8.01-654(B)(2) is an independent and adequate state procedural rule). Accordingly, Claim H is simultaneously exhausted and procedurally defaulted for purposes of federal habeas review.

As noted, Petitioner may overcome procedural default by "showing [] cause and prejudice or a fundamental miscarriage of justice due to [his] actual innocence." *Silk*, 2009 WL 742552, at *3 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998), and *Harris v. Reed*, 489 U.S. 255, 262 (1989)). Although Petitioner asserts that he is not guilty of the crimes upon which he was convicted because the prosecution did not meet the legal requirements of the offenses, Petitioner does not assert that he is actually innocent, or present any evidence of actual innocence. The gist of Petitioner's claim is that the jury should have believed him and not the other evidence. Such a contention does not establish "actual innocence." Absent a sufficient assertion of actual innocence, or evidence supporting actual innocence, Petitioner cannot demonstrate a fundamental miscarriage

---

[3] Respondent did not identify Claim H as one of Petitioner's claims for relief in this federal habeas petition, but the Court nonetheless considers it as part of Petitioner's claims. *See* ECF No. 11, attach. 1 at 2; ECF No. 32 at 5.

of justice. *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999) ("In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, 'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the *new evidence*.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)) (emphasis added).

"[C]ause" refers to "some objective factor external to the defense [that] impeded counsel's [or the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Petitioner generally argues that the Supreme Court of Virginia prevented him from using the habeas corpus remedy (*see* ECF No. 7 at 2; ECF No. 9 at 2), but offers no argument or evidence that some objective factor impeded Petitioner's ability to comply with the state procedural rules regarding appellate review. Petitioner also generally argues that in connection with his Second Convictions, his counsel failed to advise him that a direct appeal was the exclusive remedy for which to raise his claims. *See* ECF No. 25 at 3. However, the record demonstrates that Petitioner submitted a notarized affidavit to the Court of Appeals of Virginia stating that he understood that withdrawing his appeal would cause his claims on appeal to be abandoned "irrevocably" and that he "'knowingly and voluntarily, and after mature consideration,' wished to withdraw his notice of appeal." ECF No. 28, attach. 4 at 2. Petitioner's affidavit to the Court of Appeals of Virginia demonstrates that no "objective factor" external to his defense prevented him from complying with the state's rules. Therefore, Petitioner fails to overcome procedural default because he does not present argument regarding some objective factor external to the defense that impeded his efforts to comply with the rule. *Accord Strickler*, 527 U.S. at 283 n.24. Absent cause, a prejudice analysis is unnecessary. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995) (noting that courts should not consider the issue of prejudice absent cause to avoid the risk of reaching an alternative

14

holding). Accordingly, the undersigned **FINDS** that Claims C, D, E, H, 1, 2, and 4 are simultaneously exhausted and procedurally defaulted, and thus, should be dismissed.

5. *Claims G and 3 are not cognizable in federal habeas review.*

Claim G and 3 allege errors involving Petitioner's state habeas corpus proceedings. Petitioner's detention stems from his state conviction, not his post-conviction proceedings, and accordingly, such claims of error are not cognizable on federal habeas review. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors involved with state post-conviction proceedings are not cognizable on federal habeas review). Stated differently, errors involving state post-conviction proceedings are not cognizable on federal habeas review. *Id.* Accordingly, the undersigned **FINDS** that Claims G and 3 are not cognizable in federal habeas review, and thus, should be dismissed.

B. Standards of Review on Merits of Remaining Claims

1. *28 U.S.C. § 2254(d)*

Habeas relief is warranted only if Petitioner can demonstrate that the adjudication of each of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, federal habeas relief is precluded, so long as "fair-minded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA[4], § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in

---

[4] Antiterrorism and Effective Death Penalty Act of 1996.

state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.") (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified *res judicata* rule" under § 2244)). In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 562 U.S. 115, 121 (2011).

In *Williams v. Taylor*, the Supreme Court explained that the "exceptions" encapsulated by § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S. 362, 404–05 (2000). A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405–06. This Court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). *See also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In making this determination under Section 2254(d)(1), the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) ("Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court."). Thus, it is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). *See also Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (explaining that the Court independently reviews whether that decision satisfies either standard). Additionally, in undertaking such review, this Court is mindful that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

*2. Ineffective Assistance of Counsel*

Because there is no allegation that the state courts decided Petitioner's state habeas "differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts," *Williams v. Taylor*, 529 U.S. 362, 413 (2000), the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law" and "[t]he applicable federal law consists of the rules for determining when a criminal defendant has received inadequate representation as defined in *Strickland*," *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 100 (2011); 28 U.S.C. § 2254(d)(1)). *See also Strickland v. Washington*, 446 U.S. 668 (1984). Generally, to have been

entitled to habeas relief in State court for ineffective assistance of counsel claims under the Sixth Amendment, Petitioner had to show both that his defense counsel provided deficient assistance, and that he was prejudiced as a result of counsel's deficiency. *Strickland v. Washington*, 446 U.S. 668, 700 (1984) (conceptualizing the inquiry as two required prongs: a deficiency prong and a prejudice prong). First, to establish deficient performance, Petitioner was required to show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 446 U.S. at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Petitioner was also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 687, 693-94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that a petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding").

The United States Supreme Court summarized the high bar faced by petitioners in a federal habeas proceeding where a petitioner's Sixth Amendment ineffective assistance of counsel claims were previously rejected by the state court:

> Establishing that a state court's application of *Strickland* was unreasonable under §
> 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d)
> are both 'highly deferential,' . . . and when the two apply in tandem, review is
> 'doubly' so . . . . The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial. . . . Federal habeas courts must guard against the danger
> of equating unreasonableness under *Strickland* with unreasonableness under §
> 2254(d). When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any reasonable argument that
> counsel satisfied *Strickland*'s deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122–23 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lindh v. Murphy*, 521 U.S.

320, 333 n.7 (1997); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))) (internal citations omitted). *See also Knowles*, 556 U.S. at 123 ("Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard . . . Mirzayance's ineffective-assistance claim fails.") (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (*per curiam*)). To be sure, and particularly apropos to Petitioner's claim, the "[f]ailure to raise a meritless argument can *never* amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996)) (emphasis added).

    With these principles in mind, the undersigned now turns to the merits of the remaining claims in the Petition.

D. Facts and Findings of Law

    *1. Claims A, B, and F: Insufficient Evidence*

    In Claims A, B, and F, Petitioner alleges that the evidence presented at trial was insufficient to support his convictions. Specifically, in Claim A, Petitioner alleges that there was insufficient evidence to convict him of rape because he did not penetrate the victim's vagina. ECF No. 9 at 3–4; ECF No. 11 attach. 1 at 8. In Claim B, Petitioner alleges that at trial, the victim's testimony was not credible because she testified inconsistently with the information obtained in her SANE examination. ECF No. 9 at 5; ECF No. 11, attach. 1 at 8. In Claim C, Petitioner alleges that there was insufficient evidence to convict him of unlawful entry because his actual intent upon entering the apartment was to reconcile his marriage with the victim, and that he had consent to do so. ECF No. 9 at 7; ECF No. 11, attach. 1 at 8.

    On direct appeal to the Court of Appeals of Virginia, Petitioner raised Claims A, B, and F. ECF No. 28, attach. 1 at 4 (explaining Petitioner's appeal as arguing that the victim's testimony

that Petitioner "penetrated her vagina with his penis was not credible because she 'did not actually see his penis' and she admitted that he could not maintain an erection" and as arguing that "the evidence failed to prove that he entered [the victim's] apartment unlawfully because 'nothing in [Petitioner's] testimony suggest[ed] that he entered [her] apartment without her consent' and that no physical evidence refuted his testimony."). In rejecting his appeal, the Court of Appeals of Virginia explained,

> Here, the trial court was entitled to accept Tejada's testimony and to reject appellant's self-serving account. See Flanagan v. Commonwealth, 58 Va. App. 681, 702 (2011). Further, while 'a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim,' Tejada's account was corroborated both by physical evidence and by Macias's testimony. Wilson v. Commonwealth, 46 Va. App. 73, 87 (2005). Macias testified that appellant 'attacked' him and Tejada and 'took' her into the apartment, testimony that was consistent with appellant's statements during Corona's interview. Further, Tejada's testimony that appellant strangled her was supported not only by Macias's observations when he entered the apartment, but also by the red marks on Tejada's neck. Appellant admitted that he attempted to have sexual intercourse with Tejada moments after entering her apartment, that he was angry with her, and that he slapped her on her thighs. Her testimony that he had sexual intercourse with her against her will was also corroborated by the presence of bruises on her breast, her ripped clothing, and the laceration on her lip. When the police arrived, appellant immediately fled the scene, an additional circumstance supporting an inference of guilt. See Speller v. Commonwealth, 69 Va. App. 378, 388 (2018) ('Flight following the commission of a crime is evidence of guilt . . . .' (quoting Clagett v. Commonwealth, 252 Va. 79, 93 (1996))). Accordingly, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that appellant unlawfully entered Tejada's apartment, that he strangled her, and that he raped her.

ECF No. 28, attach. 1 at 5–6.

It is well-established that "[t]he standard of review for an insufficient evidence claim is deferential to the finder of facts; it is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.'" *Rodgers v. Angelone*, 113 F. Supp. 2d 922, 934 (E.D. Va. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979); *McMillan v. Pennsylvania*, 477 U.S. 79

(1986); *Inge v. Procunier,* 758 F.2d 1010 (4th Cir. 1985) *cert. denied,* 474 U.S. 833 (1985); *Goldsmith v. Witkowski,* 981 F.2d 697, 701 (4th Cir. 1992), *cert. denied,* 509 U.S. 913 (1993)) (italics in original).

Here, the Court of Appeals of Virginia found that the Trial Court was entitled to reject Petitioner's self-serving account in favor of the victim's testimony that he had sex with her against her will, even if such evidence was uncorroborated. ECF No. 28, attach. 1 at 5. Nonetheless, the Court of Appeals of Virginia found that the victim's testimony was corroborated by physical evidence, and another witness's testimony. *Id.* The Court of Appeals cited sound and correct Virginia case-law, *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011), and *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005) for these propositions. *Id.* The Court of Appeals of Virginia further explained that there was credible and sufficient evidence that Petitioner "attacked" a witness who was with the victim" and "took" the victim into her apartment without her consent to enter. *Id.* Accordingly, under the legal standard discussed, *supra*, the Court of Appeals of Virginia's rejection of Claims A, B, and F on direct appeal was neither unreasonable, nor contrary to federal law. Accordingly, the undersigned **RECOMMENDS** that Claims A, B, and F be **DISMISSED**.

### 2. *Claim 5: Ineffective Assistance of Counsel*

In Claim 5, Petitioner alleges counsel was ineffective for failing to advise Petitioner that "a direct appeal was the exclusive remedy for [his] claims" and had counsel done so, Petitioner "would not have waived his direct appeal." ECF No. 16 at 4. Petitioner raised Claim 5 in his Third State Habeas Petition, wherein he alleged "he was denied the effective assistance of counsel when his counsel failed to advise him that, if he withdrew his appeal, his appellate claims would

be waived." ECF No. 28, attach. 4 at 1. In dismissing his Third State Habeas Petition, the Supreme

Court of Virginia explained that:

> The Court holds this claim satisfies neither the 'performance' nor the 'prejudice'
> prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668,
> 687 (1984). The record, including the affidavit that petitioner filed in support of his
> request to withdraw his appeal, demonstrates that petitioner provided the Court of
> Appeals with a notarized affidavit in which he averred counsel advised him he
> could waive his appeal, but if he did, his appellate issues would be abandoned
> 'irrevocably.' Petitioner stated he 'knowingly and voluntarily, and after mature
> consideration,' wished to withdraw his notice of appeal. Accordingly, the record
> demonstrates that, contrary to petitioner's claim, he was advised by counsel that
> withdrawal of his appeal would result in the waiver of his appellate issues.
> Petitioner nonetheless decided to withdraw the appeal. Thus, petitioner has failed
> to demonstrate that counsel's performance was deficient or that there is a
> reasonable probability that, but for counsel's alleged error, the result of the
> proceeding would have been different.

ECF No. 28, attach. 4 at 2. Thus, in reviewing Petitioner's claim, the Supreme Court of Virginia

found that Petitioner submitted a notarized affidavit to the Court of Appeals which made clear not

only that counsel did in fact advise Petitioner that he could waive his appeal, but those issues on

appeal could not be raised in a later proceeding. In light of the evidence considered by the Supreme

Court of Virginia, specifically, Petitioner's notarized affidavit, the undersigned **FINDS** that the

Supreme Court of Virginia's rejection of Claim 5 in Petitioner's state habeas proceeding was

neither unreasonable nor contrary to federal law. Moreover, Petitioner cannot demonstrate that

his counsel's representation fell below an objective standard of reasonableness, where counsel not

only advised Petitioner of the consequences of withdrawing his appeal, but also prepared an

affidavit to ensure Petitioner understood the consequences, and voluntarily chose to abandon his

appeal. *See Strickland*, 446 U.S. at 688–89. The undersigned **FINDS** that there is no reason

Petitioner should not be bound by his sworn affidavit that stated he was advised of the

consequences of withdrawing his appeal, and knowingly and voluntarily chose to do so.

Accordingly, the undersigned **RECOMMENDS** that Claim 5 be **DISMISSED**.

## III. OUTSTANDING DISPOSITIVE MOTIONS

Petitioner filed two dispositive motions in this case, including a Motion for Summary Judgment (ECF No. 33), and a Motion for Injunctive Relief (ECF No. 40). Petitioner's Motion for Summary Judgment raises the same claims as the Petitions and requests that the Court grant the relief he requested in his Petitions. *See* ECF No. 33. The Motion for Injunction Relief requests the Court enjoin the Commonwealth of Virginia from enforcing his Second Convictions. ECF No. 40. Based on the undersigned's recommendation to dismiss each claim in the Petitions, the undersigned also **RECOMMENDS** that Petitioner's Motion for Summary Judgment, ECF No. 33, and Motion for Injunctive Relief, ECF No. 40, be **DISMISSED as MOOT**.

## IV. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 26, be **GRANTED**, and the Petitions, ECF Nos. 1, 15, be **DENIED** and **DISMISSED WITH PREJUDICE**. The undersigned also **RECOMMENDS** that Petitioner's Motion for Summary Judgment, ECF No. 33, and Motion for Injunctive Relief, ECF No. 40, be **DISMISSED as MOOT**.

## V. OUTSTANDING NON-DISPOSITIVE MOTIONS

Petitioner further filed a number of other motions in this case, including: a Motion to Amend/Correct (ECF No. 25), a Motion for Immediate Relief and Clarification (ECF No. 31), two Motions for Writ of Mandamus (ECF Nos. 37, 38), a Motion for Recusal (ECF No. 41), and a Motion for Sanctions (ECF No. 42). Further, Respondent filed a Motion to Stay (ECF No. 34). The Court reviews each in turn below.

Petitioner's Motion to Amend requests that he be permitted to amend his Second 2254 Petition to elaborate on his claims. ECF No. 25. Petitioner's Motion to Amend, ECF No. 25, is

**GRANTED**.  The Court considered Petitioner's allegations in his Motion to Amend while reviewing the Petitions.

In the Motion for Immediate Relief and Clarification, Petitioner alleges difficulty receiving legal mail, and requests that the Court allow him extra time to receive documents. *See* ECF No. 31.  The Court did not penalize Plaintiff for any late filings, and considered all filings made by Petitioner regardless of when such filings were made.  Accordingly, the Motion for Immediate Relief and Clarification, ECF No. 31, is **DISMISSED as MOOT**.

In the Motions for Writs of Mandamus, ECF Nos. 37 and 38, Petitioner requests that the Court resolve the Motion to Dismiss and the Motion for Summary Judgment.  ECF Nos. 37, 38. Based on the recommendation by the undersigned to grant the Motion to Dismiss and dismiss the Motion for Summary Judgment, the Motions for Writs of Mandamus, ECF Nos. 37, 38, are **DISMISSED as MOOT**.

In the Motion for Recusal, ECF No. 41, Petitioner requests that the undersigned recuse himself from his proceeding because the undersigned failed to issue a report in this case for five years and eighteen months, and that "likelihood of bias on part of the judge." ECF No. 41.  A judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned," including where "he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a)–(b)(1).  A judge's alleged "bias or prejudice must, as a general matter, stem from 'a source outside the judicial proceeding at hand' in order to disqualify a judge." *Belue v. Leventhal*, 640 F.3d 567, 572 (4th. Cir. 2011) (quoting *Liteky v. United States*, 510 U.S. 540, 545 (1994)). Here, Respondent's Motion to Dismiss has only been pending before the Court for several months, and Petitioner has not stated any facts to demonstrate "a likelihood of bias" on part of the undersigned.  Accordingly, Petitioner has failed to allege any facts to support an allegation that

24

the undersigned's impartiality may reasonably be questioned, or that the undersigned is biased or prejudiced towards Petitioner. Thus, Petitioner's Motion for Recusal, ECF No. 41, is **DENIED**.

In the Motion for Sanctions, ECF No. 42, Petitioner argues that Respondent did not timely file its answer to the Petitions. The Court's Order on October 25, 2021 required Respondent to file an answer to the Petitions within thirty days. ECF No. 18. Respondent filed a timely Answer, Motion to Dismiss, Brief in Support, and Roseboro Notice on November 12, 2021. ECF Nos. 26–29. Accordingly, Petitioner's Motion for Sanctions, ECF No. 42, is **DENIED**.

Respondent filed a Motion to Stay requesting that the Court stay any briefing regarding Petitioner's Motion for Summary Judgment until the Court rules upon the Motion to Dismiss. ECF No. 34. Based on the recommendation by the undersigned to dismiss the Petitions, the Motion to Stay, ECF No. 34, is **DISMISSED as MOOT**.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment

of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985);

*Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v.*

*Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

    The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to

Petitioner and to counsel for Respondent.

/s/

Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
June 14, 2022